GERTIE KEYSER, Respondent, v. G. PURD HAYS, Defendant, and McGREGOR-NOE HARDWARE COMPANY, a Corporation, Interpleader, Appellant.

Springfield Court of Appeals, June 17, 1915.

1. **APPEAL AND ERROR: Assignments of Error: Evidence: Weight of.** It is not the province of the appellate court to weigh conflicting evidence. Assignments of error that the finding is against the evidence, against the weight of evidence and for the wrong party, mean merely that there is no substantial evidence to sustain the verdict.

2. **JURY: Waiver of Trial By: When Shown.** Where the judgment recites that both parties announced ready for trial and "that all and singular the matters at issue were submitted to the court sitting as a jury," waiver of a jury trial is sufficiently shown, the point being first raised on appeal.

Appeal from Christian County Circuit Court.—*Hon. John T. Moore*, Judge.

AFFIRMED.

*G. Purd Hays* for appellant.

*S. E. Bronson* for respondent.

STURGIS, J.—This is a suit in replevin origi-
nally brought against one Hays for possession of two
promissory notes, one for $100 and the other for $200,
in his physical possession. The defendant Hays an-
swered that he had no interest in the notes except as
agent of the "Interpleaders." The McGregor-Noe
Hardware Company is designated as the interpleader
in an "interplea" or answer filed by it but it is more
properly a defendant, made such on its own motion on
the ground of its being a real party in interest. The
defendant Hays came into possession of the notes as
agent and attorney for this interpleader and some other
wholesale firms having a like interest. The inter-
pleader, for itself and such other firms, claims a right-
ful possession of the notes as collateral security for
the notes of H. E. Keyser, brother of the plaintiff, to
such interpleaders.

The origin of this controversy is that H. E. Key-
ser, being a merchant at Riverdale, Christian county,
Missouri, became indebted to interpleader in the sum of
$151.15. He was also indebted to three other whole-
sale firms in smaller amounts aggregating in all
$342.39. The defendant Hays had these four accounts
for collection and H. E. Keyser was being threatened
with bankruptcy proceedings. H. E. Keyser owed in
all some $1400, but defendant Hays did not hold all
such debts for collection. The plaintiff was the owner
of the notes now in controversy and at least one other
note, and there was some talk and negotiations looking
to her helping her brother and preventing his bank-
ruptcy by putting up her notes to his creditors as col-
lateral security. Whether this was actually done was

the question contested at the trial and decided in plaintiff's favor.

Plaintiff admits that she offered to put up these notes as collateral for her brother on condition that his creditors give him "a certain length of time" to sell his goods to pay the same. Some of the creditors, especially those represented by Hays, agreed to this but others did not. One of the creditors represented by Hays did not acquiesce in this arrangement and one of plaintiff's notes for $500, which such creditor was to receive as collateral, was returned to this plaintiff. Plaintiff's notes were at a bank for safe-keeping and defendant Hays testified that she agreed to put up the same as collateral security for the debts of interpleader and the other three creditors then represented by him and directed Hays to get the notes from the bank which he accordingly did. Plaintiff denies that any such arrangement was consummated and says that she did not deliver these notes to Hays. She testified: "I told him where the notes were but I did not give him authority to get them." The banker, who was a mere custodian of the notes, testified that plaintiff never authorized him to turn the notes over to Hays, but that he did so purely on Hays' request. The notes were payable to the order of plaintiff and were never endorsed by her. H. E. Keyser subsequently went into bankruptcy.

The case was tried by the court without a jury and no declarations of law were asked or given. We know nothing of the views of the trial court except that he heard the evidence and found for the plaintiff.

The defendant assigns as error that the finding is against the evidence, against the weight of the evidence, and for the wrong party. It is not our province to weigh the evidence and these assignments of error can mean no more than that there is no substantial evidence to sustain the verdict. We fully agree, in accordance with the cases cited by interpleader, in the

contention that where the evidence is all one way and against the verdict, this court will reverse the case; but such is not the case here presented. There is a conflict in the evidence as to whether the proposition whereby plaintiff was to put up her notes as collateral security for her brother was ever actually consummated or was a matter merely talked about conditionally, and to which the plaintiff never gave her final consent.

The appellant claims that this case must be reversed because no waiver of a jury trial is shown. It is conceded that no request was made for a jury trial and no objection made to a trial before the court; nothing is said in the motion for new trial on this point and no motion in arrest of judgment was filed. The point is purely an afterthought and is raised in this court for the first time. We find, however, that the judgment recites that: "Both parties announce ready for trial, all and singular the matters at issue are submitted to the court sitting as a jury," etc. This sufficiently shows a waiver of a jury trial. Our views on this point will be found in the case of Walker v. Modern Woodmen of America, decided at this term of court, and cases there cited.

The judgment is accordingly affirmed.

*Robertson, P. J.,* and *Farrington, J.,* concur.